UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALBANESE ENTERPRISES, INC.,

                Plaintiff,

vs.                         Case No.  3:13-cv-1471-J-34MCR

CITY OF JACKSONVILLE,

                Defendant.

_____/

# O R D E R

**THIS CAUSE** is before the Court on Plaintiff's Verified Motion for Preliminary Injunction and Incorporated Memorandum of Law (Doc. 2; Motion) filed on December 2, 2013.  Plaintiff also filed a request for oral argument on the Motion.  See Plaintiff's Request for Oral Argument on Verified Motion for Preliminary Injunction (Doc. 3; Request for Oral Argument).  On December 18, 2013, Defendant City of Jacksonville (the City), filed Defendant City of Jacksonville's Response in Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. 14; Response).  In accordance with the Court's briefing schedule, see Order (Doc. 9), on January 3, 2014, Plaintiff Albanese Enterprises, Inc. (Albanese) filed Plaintiff's Reply to Defendant's Response in Opposition to Motion for Preliminary Injunction (Doc. 17; Reply).  The parties then filed a motion requesting that the Court consolidate the preliminary injunction hearing with the trial on the merits because "this case presents pure questions of law and is ripe for this Court's consideration on the merits, without the need for any discovery."  See Joint Motion to Consolidate Hearing on Preliminary Injunction with Trial on Merits Pursuant to Rule 65(A)(2), Fed.R.Civ.P. (Doc. 21; Joint Motion to Consolidate), filed

January 13, 2014.  The Court granted the Joint Motion to Consolidate on January 14, 2014.

<u>See</u> Order (Doc. 22).[1]  On January 22, 2014, the Court held the consolidated motion hearing

and trial.  <u>See</u> Minute Entry (Doc. 23; Hearing).[2]  At the Hearing, the parties agreed that the

Court should render final judgment in this case based on the current record.  Accordingly,

this matter is ripe for review.

## I.     Factual Background[3]

Albanese seeks to open a "bikini bar" at a property located at 8669 Baymeadows

Road, Jacksonville, Florida (the Subject Property).  <u>See</u> Complaint for Declaratory Judgment

and Injunctive Relief (Doc. 1; Complaint) ¶¶ 8, 10.  This establishment "will, <u>inter alia</u>, feature

non-nude entertainment by dancers performing choreographed routines to music."  <u>Id.</u> ¶ 10.

Albanese also intends to "sell and serve both food and alcoholic beverages to its customers."

<u>Id.</u>  According to Albanese, the dancers will engage in expressive activity "performed before

a consensual audience, all over the age of 18 years, desirous of receiving and enjoying the

message conveyed by the entertainer of normal human sexual interest and sensual

subtleties."  <u>Id.</u> ¶ 13.  However, "the dancing will <u>not</u> feature nude or semi-nude

entertainment" as regulated by Chapter 150 of the Jacksonville, Florida Ordinance Code (the

Code).  <u>Id.</u> ¶ 16. Instead, the "bikini bar" will be a "dancing entertainment" business defined

---

[1] Pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure, the Court advanced the trial on the merits and consolidated it with the preliminary injunction hearing.

[2] Because the Court held the January 22, 2014 Hearing on the Motion, Plaintiff's Request for Oral Argument will be denied as moot.

[3] The facts herein are drawn largely from the Complaint and its Exhibits and are undisputed by the City. <u>See</u> Response at 1.

and regulated in Chapter 151 of the Code.  Id. ¶¶ 8, 15, 19.  Specifically, section 151.103

provides that:

> Dancing entertainment establishment means any establishment where any
> worker dances and accepts any consideration, tip, remuneration or
> compensation from or on behalf of a customer.  A dancing entertainment
> establishment shall not include any theater, concert hall, art center, museum
> or similar establishment that is primarily devoted to the arts or theatrical
> performances as defined in Section 150.103.

See Code § 151.103(a); Complaint, Ex. A at 2.  To operate such an establishment, an entity

must first obtain a license from the Sheriff.  See Code § 151.202(a); Complaint, Ex. A at 4.

Albanese has obtained the required license, and does not challenge the licensing

requirements set forth in Chapter 151.  See Complaint ¶¶ 18-19, Ex. B; Motion at 1-2.

The property at issue here is located in a Commercial Community/General-1 (CCG-1)

zoning district as defined in Code Chapter 656 (the Zoning Code).  See Complaint ¶ 11, Ex.

D.   Pursuant to the City's Zoning Code, the operation of "[d]ancing entertainment

establishments not serving alcohol" is a permitted use by right for property zoned CCG-1.

See Code § 656.313(A)(IV)(a)(23); Complaint, Ex. D at 11.  Accordingly, having obtained a

license to do so, Albanese can lawfully open an establishment at the Subject Property which

serves food and provides dancing entertainment.  See Complaint ¶ 33 ("[T]he subject

property . . . is properly zoned for a dancing entertainment establishment (by right), but a

special exception would be required to serve alcohol at such an establishment."); id., Ex. J.

However, Albanese seeks to serve alcohol at this property as well.  In a CCG-1

zoning district, "[a]n establishment of a facility which includes the retail sale and service of

all alcoholic beverages including liquor, beer or wine for on-premises consumption or off-

premises consumption or both" is a "permissible use by exception."  See Code §

656.313(A)(IV)(c)(1); Complaint, Ex. D at 11.  The process and criteria for obtaining zoning exceptions is set forth in Part I, Subpart D of the Zoning Code.  See Code § 656.131; Complaint, Ex. E.  The City's Planning Commission reviews and considers applications for zoning exceptions at public hearings and is vested with the authority to approve or deny the applications. See Complaint ¶ 26.  In Application No. E-13-33, Albanese applied for a zoning exception allowing for "retail sale and service of all alcoholic beverages for on-premises consumption at the [S]ubject [P]roperty . . . ."  Id. ¶ 27, Ex. F at 1.  The Planning and Development Department (Planning Department) recommended approval of the application, noting that "[t]he applicant intends to operate a restaurant on the premises . . . ." Id., Ex. F at 4.  On August 15, 2013, the Planning Commission approved the application.[4]  Id., Ex. F at 2.

Although Albanese is licensed and properly zoned to provide dancing entertainment, and authorized via a zoning exception to serve alcohol, it still cannot open the bikini bar. See Complaint ¶¶ 35-37.  Pursuant to the Zoning Code, dancing entertainment establishments serving alcohol are enumerated as "permissible uses by exception" in CCG-1 districts.  See Code § 656.313(A)(IV)(c)(17).  Likewise, Part 8 of the City's Zoning Code, which governs alcoholic beverages, provides that "[a] zoning exception shall be required any time one or more principle uses allowed by right in any zoning district is combined with any use regulated under this Part."  See Code § 656.808(e).[5]  Thus, Albanese must obtain an

_____

[4] Notably, Albanese did not obtain its license from the Sheriff to operate a dancing entertainment establishment until October 11, 2013, after the City approved the application for the liquor exception.  See id., Ex. B

[5] Under the Code, "[p]rinciple use means any use specifically identified as a permitted or permissible use in a given zoning district."  See Code § 656.1601.

additional zoning exception to operate as a dancing entertainment establishment which serves alcohol.  See Complaint ¶ 33, Ex. J.  Albanese applied for the exception and on November 14, 2013, the Planning Commission denied Albanese's application for a "dancing entertainment establishment serving alcohol" zoning exception.  See id. ¶ 39, Ex. L.  Following this denial, Albanese initiated the instant action on November 27, 2013.  See generally Complaint.  In the Complaint, Albanese seeks a declaratory judgment that Ordinance 2007-1047-E, which enacted the Zoning Code provisions affecting Albanese, is unconstitutional under the First and Fourteenth Amendments.  Id. at 15.  Albanese also requests that the Court enter a permanent injunction enjoining the enforcement of this Ordinance.  Id. at 15, 18.

On January 22, 2008, the City Council enacted Ordinance 2007-1047-E (the Ordinance) in which it made certain changes to the Code with respect to dancing entertainment establishments.  See id. ¶ 32, Ex. I.  Specifically, in the Ordinance, the City amended the definition of "dancing entertainment establishment" in Chapter 151.  See id., Ex. I: Ordinance, sec. 3.  A "dancing entertainment establishment" was previously defined in relevant part as "any establishment at which alcoholic beverages are, or are able to be sold, dispensed, consumed, possessed or offered for sale or consumption on the premises and where any worker dances and accepts any consideration, tip, remuneration or compensation from or on behalf of a customer."[6]  See id.  The Ordinance changed the definition of a "dancing entertainment establishment" to its current form by removing the

_____

[6] The establishments excepted from coverage are the same in the current and prior versions of the definition.  Compare Complaint, Ex. I at 4-5 with Code § 151.103(a).

requirement that the establishment sell or offer alcoholic beverages for sale or consumption on the premises.  See id. ¶ 31, Ex. I: Ordinance, sec. 3.

In addition, in the Ordinance, the City added "dancing entertainment establishments not serving alcohol" as a permitted use by right and "dancing entertainment establishments serving alcohol" as a permitted use by exception in CCG-1 and CCG-2 zoning districts.  See id. ¶ 30, Ex. I: Ordinance, sec. 4.   Prior to these changes, dancing entertainment establishments were governed solely through the licensing procedures of Chapter 151, as the City Code did not have "any special zoning regulations for 'dancing entertainment establishments.'"  See Complaint ¶ 20.  The City also added subsection (e) to section 656.808 of the Code.  Subsection (e) requires a zoning exception anytime a principle use allowed by right in the Zoning Code is combined with a use regulated under the Alcoholic Beverages Chapter.  See id., Ex. I: Ordinance, sec. 5; see also id., Ex. C.  Finally, in section 6 of the Ordinance, the City added definitions for a "dancing entertainment establishment" and "principle use" to the definitions provision of the Zoning Code.  See Complaint, Ex. I: Ordinance, sec. 6.[7]

In a November 2007 report and recommendation regarding proposed changes to the Zoning Code, the City's Planning Department offered a justification for various changes.  See Complaint, Ex. H.  Specifically, the report addresses a prior version of the Ordinance which would have amended only the Alcoholic Beverages portion of the Code to require a zoning exception if "adult entertainment, dance entertainment or pari-mutual use" is added to any

---

[7] In sections 1 and 2 of the Ordinance, the City Council enacted changes to the Zoning Code's nonconforming use provisions.  See Complaint, Ex. I at secs. 1-2.  Albanese does not challenge this portion of the Ordinance.  Thus, all references to the Ordinance exclude those sections.

premises with a consumption-on-premises alcohol license.  <u>See</u> Complaint, Exs. G-H.  In a section titled "The need and justification for the change," the report states that "[t]he service of alcohol in conjunction with an adult oriented business[8] or gambling establishment represents an intensification of a use that may not be appropriate at all commercially designated locations and could be detrimental to protecting and enhancing the residential character and quality of life of surrounding established neighborhoods."  <u>See</u> <u>id.</u>, Ex. H at 2. The Planning Department concluded that adding these zoning provisions would

> further the intent of the Zoning Code and Comprehensive Plan by ensuring that an expansion or intensification of use for an existing [alcohol-licensed] establishment is compatible with the existing contiguous uses and zoning and that it will be compatible with the general character of the area does not have a detrimental effect on vehicular or pedestrian traffic, or parking conditions, and that it does not result in generation or creation of traffic inconsistent with the health, safety and welfare of the community.

<u>Id.</u> ¶ 29, Ex. H.  Notably, the Planning Department identified similar concerns in recommending that the City deny Albanese's request for a combined use zoning exception. Specifically, the Department found, <u>inter alia</u>, that the combination of alcohol with a dancing entertainment establishment at the Subject Property would: be inconsistent with certain policies of the 2030 Comprehensive Plan, not be "compatible with the existing contiguous

---

[8] The Planning Department explains in the report that the additional uses requiring a zoning exception are "a licensed adult entertainment or dancing entertainment establishment <u>as regulated pursuant to Chapter 150</u> of the Municipal Code and any Para-Mutual facility." <u>See</u> Complaint, Ex. H at 1 (emphasis added).  Chapter 150 is the Adult Entertainment and Services Code which governs establishments such as adult bookstores, adult entertainment establishments, adult motion picture booths, and adult motion picture theaters.  <u>See</u> Code § 150.103(a), (c), (e), (f).  An adult entertainment establishment is defined as "a commercial establishment where the owner, or an employee or agent of the owner, suffers, permits, allows, encourages, or pays any person to engage in nude entertainment on the premises.  Adult entertainment establishment also includes any establishment which contains or operates an adult entertainment booth."  <u>See</u> Code § 150.103(c).  Nude entertainment involves "the act of exposing or displaying specified anatomical areas, (1) for compensation or valuable consideration or for the opportunity to obtain compensation or valuable consideration, (2) to a person other than [an] employee of the establishment or of the person operating or controlling the establishment." <u>See</u> Code 150.103(b).  Given its focus on "adult oriented" businesses, the report does not appear to address the need, if any, for regulating the combined use of alcohol and the type of "dancing entertainment establishment" governed by Chapter 151.

uses or general character of the area," and have a negative impact on the community through the introduction of negative secondary effects such as criminal activity.  See Defendant's Notice of Filing November 14, 2013 Final Order of Planning Commission and Report of Planning and Development Department, with Attachments (Doc. 15) at 8, 10.  As a result, Albanese cannot operate a dancing entertainment establishment that sells alcohol on the Subject Property.

## II.    Injunction Standard

Generally, a preliminary injunction is an extraordinary and drastic remedy.  See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); see also Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300 (11th Cir. 2001).  Indeed, "[a] preliminary injunction is a powerful exercise of judicial authority in advance of trial."  Ne. Fla. Chapter of Ass'n of Gen Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1284 (11th Cir. 1990).  Thus, in order to grant a request for preliminary injunctive relief, the movant bears the burden to clearly establish the following: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that the threatened injury to the [movant] outweighs the harm an injunction may cause the [opposing party], and (4) that granting the injunction would not disserve the public interest."  Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998).  See also Davidoff & CIE, S.A., 263 F.3d at 1300; McDonald's Corp., 147 F.3d at 1306; Ne. Fla., 896 F.2d at 1284-85.  The movant, at all times, bears the burden of persuasion as to each of these four requirements.  See Ne. Fla., 896 F.2d at 1285.  The failure to establish an element, such as a substantial likelihood of success on the merits, will warrant denial of the

request for preliminary injunctive relief and obviate the need to discuss the remaining elements.[9]  See Pittman v. Cole, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994)); Del Monte Fresh Produce Co. v. Dole Food Co., 148 F. Supp. 2d 1326, 1339 n.7 (S.D. Fla. 2001).  Here, because the parties agreed to consolidate the preliminary injunction proceedings with a trial on the merits, the Court must determine whether entry of a permanent, rather than preliminary, injunction is warranted.  "For a permanent injunction, the standard is essentially the same, except that the movant must establish actual success on the merits, as opposed to a likelihood of success."  See KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006).

## III.   Overbreadth

Albanese first contends that the Ordinance is unconstitutional under the First Amendment because the definition of "dancing entertainment establishment" is overbroad.[10] See Motion at 8.  Specifically, Albanese maintains that while the City seeks to regulate the negative secondary effects purportedly associated with exotic dancing or bikini bars, the definition encompasses a variety of businesses where dancing outside that limited category occurs.  Id. at 9-10.  According to Albanese, "[o]ther than the limited exception for dancing in establishments primarily devoted to the arts or theatrical performances, the Ordinance extends to any type of dancing, including mainstream entertainment and even dancing

---

[9] Similarly, where a plaintiff fails to establish irreparable harm, the court need not address each element of a claim for preliminary injunctive relief.  See Ne. Fla., 896 F.2d at 1285 (noting that "[a] showing of irreparable harm is the sine qua non of injunctive relief" and reversing the grant of such relief absent irreparable harm).

[10] "The First Amendment, as incorporated through the Due Process Clause of the Fourteenth Amendment, applies to state and municipal governments, state-created entities, and state and municipal employees."  See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1268 (11th Cir. 2004) (internal citations omitted).

fitness studios." Id. at 9.  For example, Albanese posits that the definition would include belly dancers at hookah bars, instructors at a pole-fitness or "dance trance" exercise class, and dancing members of a band performing at a local tavern, so long as these dancers accept tips or compensation from or on behalf of customers.  Id. at 10-11.

In its Response, the City argues that the Ordinance should not be invalidated as overbroad because Albanese fails to show that the Ordinance would be unconstitutional in a substantial portion of cases.  See Response at 10.  According to the City, a review of Chapter 151 governing "dancing entertainment establishments" which, in context, follows Chapter 150 governing all-nude and semi-nude establishments, "shows that Chapter 151 is meant to regulate adult-oriented businesses and exotic dancing, otherwise known as bikini bars." Id. at 11.  Additionally, the City maintains that the Court should construe the definition in a constitutional manner if at all possible.  As such, it urges that, based on the findings of fact section of Chapter 151, and the context and references to the term throughout the Code, "it is obvious that 'dancing entertainment establishment' means an exotic dancing business, or bikini bar." Id.  Thus, the City contends that the Ordinance is a valid time, place and manner restriction on exotic dancing establishments because the City has a substantial interest in regulating negative secondary effects associated with exotic dancing and alcohol. Id. at 12-15.

### A.    Applicable Law

Generally, "to challenge a statute facially, 'the challenger must establish that no set of circumstances exists under which the Act would be valid.'" Fla. Ass'n of Prof'l Lobbyists, Inc. v. Div. of Legislative Info. Servs. of the Fla. Office of Legislative Servs., 525 F.3d 1073,

1079 n.7 (11th Cir. 2008) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

However, the First Amendment overbreadth doctrine is an exception to this rule. Id. at 1079.

"A law is overbroad that 'does not aim specifically at evils within the allowable area of State

control but, on the contrary, sweeps within its ambit other activities that in ordinary

circumstances constitute an exercise of freedom of speech.'" Id. (quoting Thornhill v.

Alabama, 310 U.S. 88, 97 (1940)).  Thus, under the First Amendment, "a law is facially

invalid if it 'punishes a substantial amount of protected free speech, judged in relation to the

statute's plainly legitimate sweep.'" Id. (quoting Virginia v. Hicks, 539 U.S. 113, 118-19

(2003)).  In accordance with these principles, to establish facial overbreadth, Albanese must

show that the Ordinance punishes a substantial amount of protected free speech, not only

in an absolute sense, but also relative to the scope of the Ordinance's legitimate

applications.  See Frazier ex. rel. Frazier v. Winn, 535 F.3d 1279, 1284 (11th Cir. 2008);

Curves, LLC v. Spalding Cnty., Ga., 685 F.3d 1284, 1290 (11th Cir. 2012).

Significantly, a facial overbreadth challenge "may be successful though 'its application

in the case under consideration may be constitutionally unobjectionable.'" See Horton v. City

of St. Augustine, Fla., 272 F.3d 1318, 1331 (11th Cir. 2001) (quoting Forsyth Cnty. v.

Nationalist Movement, 505 U.S. 123, 129 (1992)).  This principle recognizes that "'the very

existence of some broadly written laws has the potential to chill the expressive activity of

others not before the court.'" Id. (quoting Forsyth Cnty., 505 U.S. at 129).  A party may

challenge a legislative enactment under the overbreadth doctrine "'where every application

creates an impermissible risk of suppression of ideas, such as an ordinance that delegates

overly broad discretion to the decisionmaker, and in cases where the ordinance sweeps too

broadly, penalizing a substantial amount of speech that is constitutionally protected.'" Id. (quoting Forsyth, 505 U.S. at 129-30). Notably, the overbreadth doctrine is generally applied in the context of "prior restraints on speech such as before-the-fact permitting and licensing regimes." Id. at 1331-32.

In addition, the Supreme Court admonishes that the overbreadth doctrine is "strong medicine" that should be used "sparingly and only as a last resort." Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973). Indeed, the "danger to the suppression of First Amendment rights must be both 'real' and 'substantial.'" Curves, 685 F.3d at 1292 (quoting Broadrick, 413 U.S. at 615); see also Café 207, Inc. v. St. Johns Cnty., 856 F. Supp. 641, 648 (M.D. Fla. 1994) ("[F]or the overbreadth claim to be entertained in such a case the excessive scope of the statute or ordinance being reviewed must not only be real but substantial, and not subject to cure through case-by-case analysis and limiting judicial construction or partial invalidation.") aff'd 66 F.3d 272 (11th Cir. 1995). Thus, if the possibility of suppression is too remote, a statute is not overbroad. See Curves, 685 F.3d at 1292. Additionally, "courts have an obligation to construe the challenged [provision] narrowly," such that "'if it be readily susceptible to a narrowing construction that would make it constitutional, it will be upheld.'" Am. Booksellers v. Webb, 919 F.2d 1493, 1500 (11th Cir. 1990) (quoting Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 397 (1988)). Nonetheless, courts may not rewrite the challenged law to conform it to constitutional requirements. Id.

### B. Analysis

Dancing, whether nude or otherwise, is protected expression under the First Amendment. See Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 65-66 (1981); Sammy's

of Mobile, Ltd. v. City of Mobile, 140 F.3d 993, 996 n.4 (11th Cir. 1998).  The Ordinance regulates this expressive conduct by limiting the zoning districts where dancing entertainment establishments may operate, and by requiring a zoning exception before such establishments may combine dancing with the service or consumption of alcohol. Additionally, by amending the definition of dancing entertainment establishment, the Ordinance extends the licensing requirements of Chapter 151 to all establishments falling within the expanded definition.  Here, Albanese argues that the Ordinance applies to all kinds of dance, in all kinds of establishments, with very limited exceptions.  The City makes no effort to defend such a broad restriction as constitutional.  Instead, the City's defense of the Ordinance rests on interpreting it as applying only to exotic, erotic or bikini dancing type establishments.  See Response at 10-12.  Thus, as presented, the constitutionality of the Ordinance hinges on how narrowly or broadly the definition is construed.  See United States v. Stevens, 559 U.S. 460, 473 (2010).

The Supreme Court instructs that the "first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."  See United States v. Williams, 553 U.S. 285, 293 (2008).   Here, as written, the definition of "dancing entertainment establishment" unambiguously encompasses "any establishment where any worker dances" and accepts tips or compensation from, or on behalf of, a customer.  See Code § 151.103(a) (emphasis added).  The definition contains no specifications as to the type of dance involved (such as erotic or exotic), the dancer's attire or lack thereof, the artistic value or purpose of the dance, or the regularity with which the establishment features dancing.  The definition does exempt

from its reach any "theater, concert hall, art center, museum or similar establishment that is primarily devoted to the arts or theatrical performances . . . ."[11]  See Code § 151.103(a). However, this exception focuses on the nature and purpose of the establishment where dance is presented, not the nature of the dance performed by the "worker."  As such, with only this limited exception, the express terms of the Ordinance encompass any establishment where a worker dances for tips or compensation from customers.  Thus, the definition of a "dancing entertainment establishment" includes dancing that is fully clothed, not erotic in nature, or has serious artistic value; and the limited exception does not significantly limit the breadth of the Ordinance.

This expansive definition includes far more expressive conduct than the "bikini" dancing that the City seeks to regulate.  For example, if a restaurant, hotel, or night club hires professional ballroom dancers to perform periodically at their business, and those dancers accept tips from customers, the establishment would be covered by the express terms of the definition.  Indeed, even Albanese's example of a dance-based fitness studio where the instructors are paid directly by the clients would fall within the strict meaning of "any establishment where any worker dances and accepts . . . compensation from or on behalf of a customer."  Moreover, the Court finds that the threat to speech is both real and substantial in that it is not a "remote" possibility that a Spanish restaurant would enlist flamenco dancers to perform for its patrons, a hookah lounge would entertain its guests with belly dancers, a bar would feature bartenders that sing and dance on the bar top, or a

---

[11] Notably, the definition of "theatrical performance" in the Code requires, among other things, that "[a]udience members are not allowed to pay, directly or indirectly, any tip or other compensation to any performer" and "[n]o performer shall request, solicit or accept any tip or compensation from any member of an audience."  See Code § 150.103(z)(2)-(3).

hamburger restaurant would establish a niche with dancing drag queen hostesses.[12]  By virtue of being deemed a "dancing entertainment establishment," such an establishment would be required to obtain a license under Chapter 151, and be limited in the areas where it could locate pursuant to sections 656.313(A)(IV)(a)(23) and 656.313(A)(V)(a)(25) of the Zoning Code.  Moreover, if, having fallen within the definition of "dancing entertainment establishment," such an establishment wished to serve alcoholic beverages, it would be subject to the additional exception requirements.  See Code §§ 656.313(A)(IV)(c)(17); 656.313(A)(V)(c)(11); 656.808(e).  While the City may not be enforcing the Ordinance against such establishments currently, the government's promise of self-restraint cannot save an overbroad law.  Indeed, the Supreme Court addressed such a contention in Stevens stating: "But the First Amendment protects against the Government; it does not leave us at the mercy of noblesse oblige.  We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."  See Stevens, 559 U.S. at 480.

Nevertheless, the Court must uphold the Ordinance if it is "readily susceptible" to a narrowing construction that would make it constitutional.  See Am. Booksellers, 919 F.2d at 1500.  The City argues that when Chapter 151, which is titled Dancing Entertainment Establishment Code, is reviewed in total, it is "obvious" that the meaning of "dancing entertainment establishment" is limited to only exotic or "bikini bar" dancing.  See Response at 11.  Having undertaken such a review, the Court finds the City's proposed construction more strained than "obvious."  Chapter 151 is located in a part of the Code designated for "Businesses, Trades and Occupations."  The City contends that the Court can infer from the

_____

[12] As discussed at oral argument, such an establishment– Hamburger Mary's– operates in the City of Jacksonville.

-15-

fact that Chapter 151 immediately follows Chapter 150, governing Adult Entertainment, that Chapter 151 must govern "adult oriented businesses and exotic dancing, otherwise known as bikini bars." <u>See</u> Response at 11.  However, it could be just as logical for a chapter governing sexually explicit dancing to be followed by a chapter governing non-sexual dancing; or for a chapter that covers adult entertainment to be followed by a chapter that governs all other "non-adult" entertainment.  In addition, although the Findings of Fact at the start of Chapter 151 reference the problem of unauthorized adult entertainment occurring at dancing entertainment establishments, especially with respect to "VIP rooms" or private areas, the Findings never once mention exotic dancing or bikini bars. <u>See</u> Code § 151.101. Moreover, the City's argument focuses on the use of "dancing entertainment establishments" in context of Chapter 151, where the licensing requirements for these establishments appear.  However, the City also added the same definition of "dancing entertainment establishment" to the Zoning Code, where the term is used to implement zoning restrictions on these establishments.  <u>See</u> Code §§ 656.1051; 656.313(A)(IV)(a)(23); 656.313(A)(IV)(c)(17); 656.313(A)(V)(a)(25); 656.313(A)(V)(c)(11).  Unlike Chapter 151, the Zoning Code uses the term without any of the contextual clues to which the City cites to limit its meaning.[13]  Thus, the Court is not persuaded by the City's argument that the scope of the definition is limited by its context.

Additionally, although the Supreme Court has instructed that "an ambiguous term may be 'given more precise content by the neighboring words with which it is associated,'" and

---

[13] The Court notes that these Zoning Code provisions do allude to Chapter 151 by stating that "[t]his provision shall not supersede any other approvals or requirements for such use found elsewhere in this Chapter or elsewhere in the Ordinance Code."  <u>See, e.g.,</u> Code § 656.313(A)(IV)(a)(23).  However, this general reference to other requirements in the Code does not limit the meaning of the term "dancing entertainment establishment" in the Zoning Code.

"an unclear definitional phrase may take meaning from the term defined," the words here are neither ambiguous nor unclear.  See Stevens, 559 U.S. at 474.  The City fails to point to a single word or phrase within the definition that is ambiguous or requires clarification, and as such, the words should be read according to their ordinary meaning.  See id. at 474-75; see also Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992).  Nothing about the ordinary meaning of the words used in Chapter 151's definition of a "dancing entertainment establishment"–"where any worker dances and accepts any" compensation from or on behalf of a customer– requires that to fall within the ambit of Chapter 151 the dancing must be exotic or erotic, or performed by scantily-clad dancers.  Cf. Stevens, 559 U.S. at 474-75.  When asked at the Hearing to offer a construction of the definition, using its terms, that would exclude a restaurant offering non-exotic dancing entertainment, the City was unable to do so.  Instead the City argued that it is clear from the general gist of the exception within the definition that the City did not intend to cover such places.  However, as discussed above, the specific exception is applicable only to a limited type of establishment whose primary purpose is the arts or theatrical performances.  As such, the exception would not limit the reach of the Ordinance to any other type of establishment, such as a restaurant, lounge, or bar.

At oral argument, the City repeatedly emphasized that the Ordinance is meant to cover only exotic dancing and bikini-bar type establishments.  This may well be true.  Unfortunately for the City, however, what it meant to do, is not what it did.  The terms at issue here clearly and unambiguously encompass all types of dance, in all types of attire, and, with only a limited exception, in all types of establishments.  Given the broad,

unrestricted language used, limiting the Ordinance's reach to only bikini bars and exotic dancing would require the Court to completely rework or rewrite the definition.  See Eggert Grp., LLC v. Town of Harrison, 372 F. Supp. 2d 1123, 1144 (E.D. Wis. 2005); see also Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1256 n.6 (11th Cir. 2005) ("Because any narrowed reading of the sign code's exemptions would require us to rewrite its basic terms by inserting our own limiting language into § 27-850, the sign code is not susceptible to a narrowing construction."); Buzdum v. Village of Germantown, No. 06-C-0159, 2007 WL 1029088, at *6 (E.D. Wisc. Mar. 30, 2007).   Indeed, to limit the definition as the City requests, the Court would need to add terms such as exotic, erotic, adult, or bikini to the Ordinance.   Yet, courts may not "rewrite a . . . law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain, and sharply diminish [the legislative body's] incentive to draft a narrowly tailored law in the first place."  Stevens, 559 U.S. at 481 (internal quotations and citations omitted) (first alteration in original).

The Court is cognizant of the Supreme Court's admonishment that the overbreadth doctrine is "strong medicine" that should be used "sparingly and only as a last resort."  See Broadrick, 413 U.S. at 613.  Nevertheless, the Court is convinced that the instant Ordinance warrants such a remedy.  For all of the foregoing reasons, the Court determines that the Ordinance is unconstitutionally overbroad under the First Amendment because it encompasses a substantial amount of protected expression unrelated to the specific category of exotic dancing establishments with the negative secondary effects that purportedly justify the regulation.  See Schultz v. City of Cumberland, 228 F.3d 831, 849 (7th

Cir. 2000) ("In this context, the overbreadth doctrine guards against the suppression of protected speech unconnected to the negative secondary effects cited as legislative justification."); Eggert Grp., LLC, 372 F. Supp. 2d at 1135 ("[I]f the . . . ordinance covers a substantial amount of expressive activity that cannot be believed to cause negative secondary effects it will be invalidated as overbroad.").  The Court emphasizes that this finding does not mean that the City cannot regulate bikini bars.  The question of whether a restriction limited to non-nude erotic dancing or "bikini bars" would be constitutional is not at issue here, and the Court expresses no opinion on the matter.  The question before this Court is only whether the City's attempt to regulate bikini bars via the instant Ordinance is constitutionally permissible, and the Court finds that it is not.  Because the Court finds that the Ordinance is invalid as unconstitutionally overbroad and, for the reasons discussed below, will enjoin its enforcement, the Court need not determine whether the Ordinance also constitutes an unconstitutional prior restraint on speech.

## IV.    Remaining Injunction Elements

Having determined that Albanese succeeds on the merits of its First Amendment overbreadth challenge, the Court finds that the remaining factors weigh in favor of the issuance of a permanent injunction.  With respect to the irreparable injury prong, the Eleventh Circuit has held that irreparable injury occurs from the loss of First Amendment freedoms for even minimal periods of time.  KH Outdoor, LLC, 458 F.3d at 1271-72 (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)); see also Scott v. Roberts, 612 F.3d 1279, 1295 (11th Cir. 2010).  "'The rationale behind these decisions [is] that chilled free speech . . ., because of [its] intangible nature, could not be compensated for by monetary damages; in

other words, plaintiffs could not be made whole.'" <u>Scott</u>, 612 F.3d at 1295 (alterations in original) (quoting <u>Ne. Fla.</u>, 896 F.2d at 1285).  The Court notes, however, that not every violation of the First Amendment automatically requires a finding of irreparable injury entitling a plaintiff to injunctive relief.  <u>See</u> <u>KH Outdoor, LLC</u>, 458 F.3d at 1272 (citing <u>Hohe v. Casey</u>, 868 F.2d 69, 72-73 (3d Cir. 1989)).  Nonetheless, while some incidental inhibitions of First Amendment rights may be insufficient, the Court finds that the type of broad, direct unconstitutional restraint of free expression at issue in this particular case is of a nature that cannot be cured by the award of monetary damages.  <u>See</u> <u>id.</u>

As to the balance of harms, the injury to Albanese's free speech rights outweighs whatever damage the injunction may cause the City because "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury, and the [C]ity has no legitimate interest in enforcing an unconstitutional ordinance."  <u>See</u> <u>KH Outdoor, LLC</u>, 458 F.3d at 1272.  Likewise an injunction would not be adverse to the public interests in that "[t]he public has no interest in enforcing an unconstitutional ordinance."  <u>Id.</u>  Accordingly, because the Ordinance is unconstitutional under the First Amendment, and Albanese has satisfied the prerequisites for injunctive relief, enforcement of the Ordinance is due to be enjoined.

**V.      Conclusion**

Albanese challenges the Ordinance on two limited bases: 1) that the definition of "dancing entertainment establishment" is overbroad, and 2) that the requirement for a zoning exception constitutes a prior restraint.  Because the definition of "dancing entertainment establishment" encompasses substantially more dancing expression than the limited

category of bikini bars and exotic dancing that the City intended to regulate, the Court concludes that the Ordinance is unconstitutionally overbroad.  In reaching this conclusion, the Court expresses no opinion as to whether the City may properly regulate bikini bars and exotic dancing with a more narrowly drawn definition.  In light of the Court's conclusion with regard to Plaintiff's overbreadth challenge, the Court declines to address the question of whether such a statute, if constitutional on its face, might otherwise run afoul of the First Amendment as a prior restraint on speech.  Accordingly, the Court concludes that the Ordinance is unconstitutional under the First Amendment and will enjoin the City from enforcing the Ordinance.

As noted above, at the request of the parties, the Court consolidated the preliminary injunction hearing with the trial on the merits in this case.  See supra n.1.  At the Hearing, the parties informed the Court that no additional evidence was necessary and agreed that the Court should render judgment based on the current record.  Accordingly, having found that the Ordinance is unconstitutionally overbroad and due to be enjoined, the Court concludes that Albanese is entitled to the entry of Judgment in its favor, and a permanent injunction is warranted.  See Curves, LLC v. Spalding Cnty., Ga., 569 F. Supp. 2d 1305, 1314-15 (N.D. Ga. 2007).  Pursuant to the foregoing, it is

**ORDERED**:

1.  Plaintiff's Verified Motion for Preliminary Injunction and Incorporated Memorandum of Law (Doc. 2) is **GRANTED**.

2.  Plaintiff's Request for Oral Argument on Verified Motion for Preliminary Injunction (Doc. 3) is **DENIED as moot**.

3.    The Clerk of the Court is directed to enter **JUDGMENT** in favor of Plaintiff Albanese Enterprises, Inc. and against Defendant City of Jacksonville.

4.    Defendant City of Jacksonville, Florida, its agents, employees and all others acting in concert with Defendant, who receive actual notice of this Order by personal service or otherwise, are **enjoined** from enforcing sections 3-6 of Ordinance 2007-1047-E.

5.    The Clerk of the Court is further directed to terminate any remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** at Jacksonville, Florida on February 14, 2014.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties

-22-